UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA CRISANTO,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF TULARE, CHERYL DUERKSEN, TIMOTHY DURICK, MELISSA COHEN, and DOES 1-10,<br><br>    Defendants. | 1:15-cv-01527 LJO BAM<br><br>MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO STRIKE AND MOTION TO DISMISS (Docs. 6 & 7) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as

visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. INTRODUCTION

Plaintiff Angela Crisanto is an employee of the Health and Human Services Agency (HHSA) for the County of Tulare (the County). Compl. ¶ 1. She claims that she was discriminated against because she is married and female, that Defendants created a hostile work environment, and that Defendants retaliated against her for filing administrative complaints.

## III. FACTUAL BACKGROUND

Plaintiff works for HHSA as a psychologist. Compl. ¶ 1. She was hired for the position of Psychologist 1 in January of 2008. *Id.* ¶ 9. She was promoted to Psychologist 2 in March, 2009 and to Lead Psychologist in November, 2011. *Id.* Plaintiff claims that Defendants (her immediate supervisor, Timothy Durick, lateral colleague Melissa Cohen, and HHSA Chief Cheryl Duerkson) discriminate against Plaintiff "and other like-situated employees" and maintain a hostile work environment. *Id.* ¶ 11. Her claims are based on three primary issues.

First, Plaintiff claims that Durick gives Cohen "job benefits, accolades, preferential duty assignments and compensation" that are denied to other employees on the basis that he and Cohen are married and involved in "sexual/romantic relationship." *Id.* ¶ 12. Plaintiff claims that Cohen "routinely escapes job discipline for her work indiscretions that would lead to discipline for other employees not in a sexual/marital/romantic relationship with their supervisor . . ." *Id.* Plaintiff claims such treatment is contrary to County policy, but is tolerated by Duerkson because of her "close friendship with Durick and Cohen." *Id.* ¶ 17.

Second, Plaintiff claims that Durick treats female employees in a "contemptible and harassing manner." *Id.* ¶ 18. She alleges that Durick has referred to female employees as "bitches" and has made derogatory comments about their physical appearances. *Id.* She also describes an occasion where Durick physically assaulted a male co-worker. *Id.*

Third, Plaintiff describes an occasion where Durick ordered her into his office and "insisted on knowing whether Plaintiff was having 'an affair' (having sex) with a co-worker . . ." *Id.* ¶ 19. Plaintiff states that she did not have an affair with this co-worker, but that such a relationship would not have violated state law or county policy. *Id.* ¶ 20. Plaintiff "unwillingly" told Durick that she was not having an affair, but only discussed the matter due to an "implied threat of discipline for insubordination." *Id.* Plaintiff claims that the conversation "embarrassed and shocked Plaintiff, causing her great distress." *Id.* ¶ 21. Immediately following this conversation, Durick summoned the male co-worker into his office. *Id.* The co-worker also denied the relationship. *Id.* ¶ 22. Durick then asked the employee if he could substantiate a rumor that Plaintiff was involved in a relationship with a different employee, and advised him to "stay away" from Plaintiff. *Id.* Plaintiff claims that the "only reason" Durick inquired as to her personal life was because she was a married woman. *Id.* ¶ 23.

Plaintiff alleges that Durick subsequently began a "campaign of harassment" against her. *Id.* ¶ 24. Durick first became "overly critical of her work," then caused her to be "walked off the job" and placed on administrative leave for about eight months. *Id.* When Plaintiff returned on August 10, 2015, she was "stripped of significant work responsibilities" and "transferred against her will to a remote office location." *Id.* At some point shortly thereafter[1], Plaintiff was served with a "Notice of Discipline," that threatened to withhold a portion of her salary. *Id.* Plaintiff claims that the only reason that Durick took these actions against her was because she was married and female. *Id.* ¶ 23. Plaintiff then filed complaints with the County as well as the Department of Fair Employment and Housing, but no action was taken against the Defendants. *Id.* ¶ 25. Soon thereafter, Defendants "conspired and retaliated against Plaintiff." *Id.*

## IV. PROCEDURAL HISTORY

Plaintiff filed her case in state court on September 8, 2015. Compl. at 6. Plaintiff alleges that the

---

[1] Plaintiff states that the notice was dated both August 20th and 24th of 2015, but doesn't identify the date she received it. *Id.*

County discriminated against her based on her sex or gender,[2] and her marital status in violation of California's Fair Housing and Employment Act (FEHA) (Counts One and Two), as well as failed to prevent such discrimination from occurring (Count Four). *Id.* ¶¶ 27, 30, 36. She also claims that the County was responsible for maintaining a hostile work environment (Count Three), that the named Defendants personally harassed her (Count Five) and that the County retaliated against her (Count Six). *Id*. at ¶¶ 33, 39, 43. Plaintiff also alleges that Defendant Cheryl Duerkson is liable under 42 U.S.C. § 1983 because she deprived Plaintiff of her employment without due process and for discriminatory and retaliatory purposes (Count Seven). *Id.* ¶¶ 48-49.

Defendants removed the case to this Court on October 8, 2015. Notice of Removal, Doc. 2 at 1-2. On October 15, 2015, Defendants moved to strike paragraphs 41, 50 & 55, in which Plaintiff requests punitive damages. Motion to Strike ("MTS"), Doc. 6. On the same day, Defendants moved to dismiss the first five counts under Rule 12(b)(6). Mot. to Dismiss ("MTD"), Doc. 7. Plaintiff filed an opposition to these motions on November 2, 2015. "Opposition," Doc. 8. Defendants timely replied on November 9, 2015. Reply to Opp'n to Mot. to Dismiss ("Reply"), Doc. 10; Reply to Opp'n to Mot. to Strike, Doc. 9. The Court vacated the hearing set for November 16, 2015 pursuant to Local Rule 230(g), Doc. 12.

## V. <u>STANDARD OF DECISION</u>

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss

---

[2] It is unclear whether there is a difference between gender and sex-based discrimination under California law. FEHA does not provide a definition for the term "sex," but states that it "includes, but is not limited to, a person's gender." Cal. Gov't Code § 12926(r)(2). Elsewhere in the law, it seems to be used as a reference to whether a person is biologically male or female. *See* Cal. Gov't Code § 12947.5(a) (stating that is an unlawful employment practice "for an employer to refuse to permit an employee to wear pants on account of the sex of the employee."). FEHA defines "gender" as "mean[ing] sex, and includes a person's gender identity and gender expression." *Id.* In practice, California courts appear to use the terms interchangeably. Black's Law Dictionary also equates gender discrimination with sex discrimination. DISCRIMINATION, Black's Law Dictionary (10th ed. 2014), as do the parties in this case. Therefore, this Court will use the terms "sex" and "gender" interchangeably to refer to the fact that Plaintiff is female.

4

for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the Complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

\\

# VI. ANALYSIS

## A. Discrimination Claims

In Plaintiff's first and second causes of action, she claims that the County discriminated against her because of her gender and marital status. Compl. ¶ 27, 30. FEHA makes it unlawful for "an employer, because of ... marital status [or] sex [or] gender ... to discharge the person from employment ... or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). To make a prima facie showing of discrimination Plaintiff must show "(1) [s]he was a member of a protected class, (2) [s]he was qualified for the position [s]he sought or was performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Nielsen v. Trofholz Technologies, Inc.*, 750 F. Supp. 2d 1157, 1165 (E.D. Cal. 2010) *aff'd*, 470 F. App'x 647 (9th Cir. 2012) (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000)). Defendants argue that Plaintiff does not allege facts consistent with the third and fourth elements. MTD at 4-5.

First, Defendants claim that Plaintiff's allegations that she suffered "less job responsibility, office transfer, and Notice of Disciplinary Action," do not constitute "adverse employment actions" as required by the third prong of the FEHA analysis. MTD at 4-5. An "adverse employment action is one that must materially affect the terms, conditions, or privileges of employment. . ." *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1052 (2005). This test applies to "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career," and the test "must be interpreted liberally ... with a reasonable appreciation of the realities of the workplace . . ." *Id.* at 1054; *see also Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1389 (2005). Therefore, "adverse employment actions" are "not limited to [those] that impose an economic detriment or inflict a tangible psychological injury upon an employee." *Yanowitz,* 36 Cal. 4th at 1152. When considering whether an employee has been subjected

to an adverse employment action, the Court may consider the "totality of the circumstances" rather than each discreet act in isolation. *Id.* For example, in *Patten*, a California appellate court found that a school principal's transfer from an underperforming school to a school for high-achieving students along with a reduction in the level of administrative support she received, might have been adverse actions because they may have impaired her job performance. 134 Cal. App. 4th at 1390. Here, Plaintiff claims that she was "stripped of her significant work duties and responsibilities," "transferred against her will to a remote office location" and served with a "retaliatory Notice of Discipline . . .that threatened to withhold a portion of her salary for a period of time." Compl. ¶ 24. If Plaintiff is able to prove the truth of these accusations, such evidence might be sufficient for a jury to find that the changed "terms, conditions, or privileges of [her] employment" affected her materially and adversely. *See Thomas v. Dep't of Corr.*, 77 Cal. App. 4th 507, 511 (2000), as modified (Jan. 11, 2000) (finding "a materially adverse change" is a "case-by-case determination" that might be indicated by "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities . . ."). Thus, the Court finds that she has adequately pleaded this element.

Defendants also argue that the employment actions described did not have any "logical connection" to her gender or marital status. MTD at 5. To the extent that Plaintiff's claim is based on Durick's relationship with Cohen, it is not viable. As Defendants point out, under California law, "a romantic relationship between a supervisor and an employee does not, without more, give rise to a sexual discrimination or sexual harassment claim under either the FEHA or the public policy of the state." *Proksel v. Gattis*, 41 Cal.App.4th 1626, 1631, 49 Cal.Rptr.2d 322 (4th Dist. 1996). Favoritism of a spouse "may be unfair, but it does not discriminate against women or men . . ., since both are disadvantaged for reasons *other than their genders*." *Nielsen,* 750 F. Supp. 2d at 1165-66. For example, Plaintiff does not allege any facts that suggest that her male colleagues suffered any less than her or her female co-workers because of Durick's preferential treatment of Cohen. Thus, to the extent that her discrimination claims are based on this theory, they are not actionable.

Plaintiff also argues that she was targeted because she was suspected of having an affair with a co-worker. She claims that had she not been "married or female," her supervisor would not have made a relationship with a co-worker an issue. Compl. ¶ 23. As Defendants point out, however, Plaintiff has not alleged any facts that support this conclusion. In other words, Plaintiff does not give any facts, that if true, would tend to show that her Durick or anyone else took action against her because she was female or married, or both. For example, she does not allege that her male or unmarried co-workers were treated differently from her. Nor does she allege that her supervisor ever said anything to her that would suggest that his actions were motivated by the fact that she was married and/or female. Therefore, this theory is not actionable either.

Because the Complaint does not allege viable theories of gender or marital status discrimination, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's First and Second Causes of Action. Plaintiff will be allowed the opportunity to amend her claims.

**B.      Hostile Work Environment Claims**

In her third and fifth causes of action, Plaintiff claims that the Defendants maintained a hostile work environment and subjected to her harassment. Compl. ¶¶ 33, 39. Under FEHA, an employer may not harass an employee on the basis of gender or marital status. Cal. Gov't Code § 12940(j)(1). A hostile work environment sexual harassment claim requires a plaintiff employee to show she was: subjected to sexual advances, conduct, or comments that were (1) unwelcome; (2) because of sex; and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Lyle v. Warner Bros. Television Prods*., 38 Cal. 4th 264, 279 (2006) (internal citations omitted). A plaintiff must further show that the offending conduct was imputable to her employer.[3] *Id.* "Although annoying or 'merely offensive' comments in the workplace are not actionable, conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment is unlawful,

---

[3] Under FEHA, however, an employer is strictly liable for harassment by a supervisor. *Taylor v. Nabors Drilling USA, LP*, 222 Cal. App. 4th 1228, 1236 (2014).

8

even if it does not cause psychological injury to the plaintiff." *Id.* at 283. "There is no recovery 'for harassment that is occasional, isolated, sporadic, or trivial'" unless the conduct is "severe in the extreme." *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (quoting *Lyle*, 38 Cal. 4th at 283).

Defendants argue that Plaintiff's allegations that Durick used vulgar terms to refer to women and made inappropriate comments about their appearance are an inadequate basis for a hostile work environment claim. This Court agrees that Plaintiff has not stated sufficient facts to show that such comments were made with enough frequency or intensity to permeate her work environment. First, it is unclear as to whether Durick's offensive statements were ever directed at her, or the extent to which she actually witnessed him making them. Second, it is not clear how frequently and over what time period such statements were made. Thus, Plaintiff has not shown that such comments were more than occasional, isolated, or sporadic, and they are an insufficient basis for a hostile work environment claim.

As Defendants point out, Plaintiff's other allegations do not support a claim of gender-based harassment. First, the physical encounter described was directed at a male co-worker. Compl. ¶¶ 18, 22. Second, while Plaintiff claims that she was "interrogated" about her personal life because she was a married woman, she acknowledges that her supervisor also "interrogated" the man with whom she was accused of having a relationship. Compl. ¶ 18. While Plaintiff is correct that allegations of "unchaste behavior" may give rise to a hostile work environment claim, such allegations must be "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Lyle*, 38 Cal. 4th at 279. For example, the plaintiff in the Ninth Circuit case cited by Plaintiff described how one supervisor "repeatedly engaged in vulgarities, made sexual remarks, and requested sexual favors from [the plaintiff and her co-complainants]" and that another supervisor "frequently witnessed, laughed at, and herself made these types of comments." *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1515 (9th Cir. 1989). Similarly, the plaintiff in *Accardi v. Superior Court*, another case cited by Plaintiff, alleged a pattern of conduct that included:

> making statements that her baton was only useful to perform sex acts, stuffing her shotgun barrels with paper so that the weapon would explode if fired, spreading rumors that she had slept with superior officers in order to receive favorable assignments . . . mimicking and making fun of her before her peers in the unit; admitting to her that there were double standards and telling her she must live with them; allowing threats of bodily harm to be made to her in front of a room filled with officers; allowing derogatory and condescending remarks to be made about her, and women in general; and making sexual advances to her.

17 Cal. App. 4th 341, 346 (1993), as modified on denial of reh'g (Aug. 20, 1993). In contrast, Plaintiff in this case identifies a single incident in which her supervisor told a co-worker that Plaintiff was "rumored" to be involved with a third HHSA employee. *Id.* ¶ 22. Even considered in the context of the inappropriate statements allegedly made about other female employees, this incident does not raise the question that such conduct was more than "occasional, isolated, sporadic, or trivial."

Finally, Plaintiff fails to allege sufficient facts that the favoritism Durick showed to his wife sexualized the workplace. Under California law, sexual favoritism may be actionable if it is "widespread" and "severe or pervasive enough to alter [] working conditions and create a hostile work environment." *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 466 (2005). "This occurs when the actions establish a widespread pattern of bias." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009), as modified (Feb. 10, 2010) (quoting Miller, 36 Cal. 4th at 466).[4] In *Miller,* for example, a male corrections officer engaged in sexual relationships with three subordinate female employees. 36 Cal. 4th at 466. He promoted these women and awarded them with job benefits, while denying advancement opportunities to the plaintiffs, who did not have sexual contact with him. *Id.* The *Miller* plaintiffs also observed the officer engaging in sexual activity in the workplace and claimed that he touched some of them inappropriately. *Id.* at 467. The California Supreme Court later characterized the nature of the harassment in *Miller* as the "offensive sex-biased *message* that the supervisor conveyed." *Roby*, 47 Cal.

---

[4] Defendants argue that courts should not scrutinize sexual relationships that are consensual. MTD at 8-9. The California Supreme Court, however, holds that "even widespread favoritism based upon consensual sexual affairs may imbue the workplace with an atmosphere that is demeaning to women because a message is conveyed that managers view women as 'sexual playthings' or that the way required to secure advancement is to engage in sexual conduct with managers." *Id.* at 468-69.

10

4th at 708 (emphasis in original). Here, in contrast, Plaintiff has alleged that the object of Durick's favoritism is one person, his wife. Plaintiff does not allege that Durick has engaged in sexual contact with or solicited sexual favors from herself or any other employee (aside from Cohen). Nor does Plaintiff allege that Durick engaged in appropriate touching or displays of affection at the workplace. Thus, there is no reason to believe that a pattern of bias existed based on sexual availability, much less one that was widespread enough to create a hostile work environment.

For the reasons discussed above, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Third and Fifth Causes of Action. Plaintiff will be allowed the opportunity to amend her claims.

**C.** **Failure to Prevent Discrimination**

In Plaintiff's fourth cause of action, she claims that the County is also liable for failing to prevent the discrimination and harassment alleged in her first, second, and third causes of action. Compl. ¶ 36. As discussed above, the Court has found these claims deficient. Because the viability of this claim depends on those, it must be dismissed as well. Therefore, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Fourth Cause of Action. Plaintiff will be allowed the opportunity to amend her claim.

**D.** **Motion to Strike Punitive Damages**

Defendants move to strike prayers for punitive damages associated with Plaintiff's fifth and seventh causes of action. MTS at 2. As an initial matter, the Court notes that it has granted Defendants' motion to dismiss Plaintiff's fifth cause of action. Therefore, any further inquiry as to the propriety of punitive damages will have to wait until if and when an amended pleading is filed.

Plaintiff's seventh cause of action, a federal civil rights claim against Duerkson, remains. Compl. ¶ 50. Defendants seek to strike this request on the basis district courts may strike "a prayer for relief where the damages sought are not recoverable as a matter of law." MTS at 2. Defendants go on to argue that Plaintiff has not pleaded facts that would support the recovery of punitive damages under federal law. *Id.* at 2-3.

Federal Rule of Civil Procedure 12(f) provides that a court may "order stricken from any

pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Ninth Circuit has made clear "that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010).[5] Allegations to be struck must fit one of the specified categories. *Yursik v. Inland Crop Dusters Inc.*, No. CV-F-11-01602-LJO, 2011 WL 5592888, at *3 (E.D. Cal. Nov. 16, 2011). Here, Defendants claim that "there are no factual allegations in the Complaint demonstrating an entitlement to punitive damages." MTS at 3. Such an argument challenges the sufficiency of Plaintiff's requests for punitive damages without any argument that the claims are redundant, immaterial, impertinent, or scandalous. The proper vehicle for challenging the sufficiency of an allegation in a complaint is a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b) (6), and not a motion to strike, pursuant to Fed. R. Civ. P. 12(f). Under such circumstances, a district court may convert the motion and consider it as if it were brought under Rule 12(b)(6). *See Miller v. Schmitz*, No. 1:12-CV-00137-LJO, 2012 WL 1609193, at *12 (E.D. Cal. May 8, 2012). Accordingly, this court will consider the Defendants' motion as though they had correctly denominated it as a motion to dismiss for failure to state a claim upon which relief can be granted. *Id.*

Plaintiff claims that Duerkson is liable for the punitive employment actions taken against Plaintiff and that she is guilty of "oppression, fraud, and/or malice under California Civil Code Section 3294" Compl. ¶¶ 46, 50. Plaintiff is advised that while punitive damages are available pursuant to Section 1983, eligibility is determined by federal law where the underlying violation is of a federal statute. Under federal law, a Plaintiff may recover punitive damages where a defendant's conduct "was driven by evil motive or intent, or when it involved a reckless or callous indifference to the

---

[5] Defendants cite to three cases in support of their argument that 12(f) allows a court to strike a prayer for relief where damages sought are not recoverable as a matter of law. MTS at 2. The first *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 fn. 34 (C.D. Cal. 1996) (cited incorrectly by Counsel as *992* F. Supp. 1450), was decided before *Whittlestone*. The second case, *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010), was decided after *Whittlestone.* Counsel, however, misrepresented the *Kelly* Court's holding, which clearly reflected the Ninth Circuit's decision. To the extent that the court in the third case, *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1196 (C.D. Cal. 2011) relied on this theory, such reliance was error.

constitutional rights of others" or "was wantonly or oppressively done." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (internal citations omitted). Federal pleading standards allow malice and intent to be alleged generally. Fed. R. Civ. P. 9(b). However, the Supreme Court holds that "generally" is a relative term and that it does not give a party "license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686-87 (2009). Thus, many district courts, including this one, require pleadings to articulate facts that support a plausible claim that a party acted with malice or evil intent. *See e.g. Coppola v. Smith,* 982 F. Supp. 2d 1133, 1144 (E.D. Cal. 2013) ("Rule 9(b) ensures there is no heightened pleading standard for malice, but malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated.") (quoting *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012)); *Vermillion v. Corr. Corp. of Am.*, No. CV F 08-1069 LJOSMS, 2008 WL 4058063, at *9 (E.D. Cal. Aug. 28, 2008) ("Pleading the language in [state statute for punitive damages] is not objectionable when sufficient facts are alleged to support the allegation") (internal quotations omitted).

Here Plaintiff alleges that Duerkson is liable in her capacity as the chief of HHSA and "thereby ratifies, condones, aids, abets, and encourages the illegal and discriminatory conduct by Defendants Durick and Cohen." Compl.¶ 17. She is alleged to have consented to Plaintiff's administrative leave, and to have taken "no action" in response to administrative complaints filed by Plaintiff. *Id.* ¶¶ 24-25. These facts suggest that Plaintiff's entire theory of recovery against Duerkson is based on her ratification or acceptance of Durick's actions. As discussed above, this Court has found that Plaintiff failed to allege facts that support that these actions amounted to discrimination or the creation of a hostile work environment. Thus, to the extent that Duerkson's liability for punitive damages stems from these actions, Plaintiff has failed to state a case.

Moreover, under federal law"[g]enerally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) ("A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between

the supervisor's wrongful conduct and the constitutional violation."). It is unclear to the Court that Plaintiff has alleged sufficient facts to suggest that Duerkson was personally involved in an alleged constitutional deprivation. This issue is not before the Court. However, to the extent that Plaintiff has alleged Duerkson was personally involved, she has failed to allege that such involvement was "driven by evil motive or intent" or "callous indifference to the constitutional rights of others." *Dang*, 422 F.3d at 807. Rather, Plaintiff has pleaded no facts that would suggest that Duerkson bore her any ill will at all. Therefore, the Court finds that Plaintiff has failed to make a case that she is entitled to punitive damages.

## VII. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS Defendants' motion to dismiss the first five causes of action from Plaintiff's Complaint (Doc. 7).

The Court converts Defendants' motion to strike (Doc. 6) to a motion to dismiss and GRANTS Defendants' motion as to Plaintiff's request for punitive damages in her seventh cause of action.

Plaintiff shall file any amended complaint within 14 calendar days of this order. No later than 21 days after service of any amended complaint, Defendants shall file a response thereto. Plaintiff is cautioned that this will be the last opportunity to amend.

Plaintiff should only amend if amendment will not be futile based on the law and holding in this Order. This court does not have the resources to review and write extensive orders on how to write, rewrite and submit pleadings. This order gives the proper direction for the last time.

IT IS SO ORDERED.

    Dated:   **November 16, 2015**      /s/ Lawrence J. O'Neill
                                                          UNITED STATES DISTRICT JUDGE