**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANGELA CRISANTO,** | 1:15-cv-01527 LJO BAM |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO STRIKE AND MOTION TO DISMISS (Doc. 17)** |
| **v.** | |
| **COUNTY OF TULARE, CHERYL DUERKSEN, TIMOTHY DURICK, MELISSA COHEN, and DOES 1-10,** | |
| **Defendants.** | |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as

1  visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a

2  U.S. District Judge from outside the Eastern District of California.

3  ## II. <u>INTRODUCTION</u>

4  Plaintiff Angela Crisanto is an employee of the Health and Human Services Agency (HHSA) for

5  the County of Tulare (the County).  She claims that she was discriminated against because she is married

6  and female, that Defendants created a hostile work environment, and that Defendants retaliated against

7  her for filing administrative complaints.

8  ## III. <u>PROCEDURAL HISTORY</u>

9  Plaintiff filed her case in state court on September 8, 2015, raising civil rights issues arising

10  under California's Fair Employment and Housing Act ("FEHA") and 42 U.S.C. § 1983. Notice of

11  Removal, Doc. 2, at Ct. R. 6.  Defendants removed the case to this Court on October 8, 2015. *Id.* at 1-2.

12  On November 16, 2015, the Court granted Defendants' motion to dismiss Plaintiff's state law

13  discrimination and harassment claims as well as her request for punitive damages for her federal claims.

14  Mem. Decision and Order Re: Defs.' Mot. to Strike and to Dismiss ("November 2015 Order"), Doc. 15.

15  Plaintiff was allowed leave to amend. *Id.*

16  Plaintiff filed an amended complaint on November 20, 2015. First Am. Compl. ("FAC"), Doc.

17  16. Plaintiff alleges that the County discriminated against her based on her sex or gender,[1] and her

18  marital status (Counts One and Two), as well as failed to prevent such discrimination from occurring

19  (Count Four). *Id.* ¶¶ 35, 38, 41. She also claims that the County was responsible for maintaining a

20  hostile work environment (Count Three), that the named Defendants personally harassed her (Count

21  Five) and that the County retaliated against her (Count Six). *Id.* ¶¶ 41, 47, 50. Plaintiff also alleges that

22  Defendant Cheryl Duerkson is liable under 42 U.S.C. § 1983 because she deprived Plaintiff of her

23  employment without due process and in violation of her First Amendment rights. (Count Seven). *Id.* ¶¶

24

25  [1] As discussed in the November 16, 2015 Order, the Court will use the terms "sex" and "gender" interchangeably to refer to the fact that Plaintiff is female.

2

1   52-55.

2        On December 16, 2015, Defendants moved to dismiss Plaintiff's first five causes of action.

3   Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("MTD"), Doc. 17-1. Plaintiff filed an opposition

4   on January 13, 2016. "Opposition," Doc. 19. Defendants timely replied on January 19, 2016. Reply to

5   Opp'n to Mot. to Dismiss ("Reply"), Doc. 20. The Court vacated the hearing set for January 27, 2016

6   pursuant to Local Rule 230(g), Doc. 21.

7                                    **IV. <u>FACTUAL BACKGROUND</u>**

8        Plaintiff works for HHSA as a psychologist. FAC ¶ 1. She was hired for the position of

9   Psychologist 1 in January of 2008. *Id. ¶* 9. She was promoted to Psychologist 2 in March of 2009 and to

10  Lead Psychologist in November of 2011. *Id.* Plaintiff claims that Defendants (her immediate supervisor,

11  Timothy Durick, lateral colleague Melissa Cohen, and HHSA Chief Cheryl Duerkson) discriminate

12  against Plaintiff "and other like-situated employees" and maintain a hostile work environment. *Id. ¶* 11.

13  Her claims are based on the following issues.

14       First, Plaintiff claims that Durick gives Cohen "job benefits, accolades, preferential duty

15  assignments and compensation" that are denied to other employees on the basis that he and Cohen are

16  married and involved in "sexual/romantic relationship." *Id.* ¶ 12. Plaintiff claims that Cohen "routinely

17  escapes job discipline for her work indiscretions that would lead to discipline for other employees not in

18  a sexual/marital/romantic relationship with their supervisor . . ." *Id.* Plaintiff claims such treatment is

19  contrary to County policy, but is tolerated by Duerkson because of her "close friendship with Durick and

20  Cohen." *Id.* ¶ 17. Plaintiff alleges that "other HHSA workers are required to perform extra duties to

21  cover for Defendant Cohen not performing her job," but that Durick "never made male employees cover

22  for or perform work for Cohen." *Id.* ¶¶ 13, 20.

23       Second, Plaintiff claims that Durick treats female employees in a "contemptible and harassing

24  manner." *Id.* ¶ 18. She alleges that Durick has referred to female employees as "bitches" and has made

25  derogatory comments about their physical appearances. *Id.* ¶ 20. She also describes an occasion where

3

1    she witnessed Durick grope a female subordinate on her upper thigh. *Id.* ¶ 22. She further alleges that

2    Durick physically assaulted a male co-worker. *Id.* ¶ 21.

3        Third, Plaintiff describes an occasion where Durick ordered her into his office and "insisted on

4    knowing whether Plaintiff was having 'an affair' (having sex) with a co-worker . . ." *Id.* ¶ 23. Plaintiff

5    states that she did not have an affair with this co-worker, but that such a relationship would not have

6    violated state law or county policy. *Id.* ¶ 24. Plaintiff "unwillingly" told Durick that she was not having

7    an affair, but only discussed the matter due to an "implied threat of discipline for insubordination." *Id.*

8    Plaintiff claims that the conversation "embarrassed and shocked Plaintiff, causing her great distress." *Id.*

9    ¶ 25. Immediately following this conversation, Durick summoned the male co-worker into his office. *Id.*

10   The co-worker also denied the relationship. *Id.* ¶ 26. Durick then asked the employee if he could

11   substantiate a rumor that Plaintiff was involved in a relationship with a different employee, and advised

12   him to "stay away" from Plaintiff. *Id.* Plaintiff claims that the "only reason" Durick inquired as to her

13   personal life was because she was a married woman. *Id.* ¶ 27. She alleges that neither Durick nor the

14   County, took any action against her alleged male partners. *Id.* ¶ 33.

15       Plaintiff alleges that Durick subsequently began a "campaign of harassment" against her. *Id.* ¶

16   28. Durick first became "overly critical of her work," then caused her to be "walked off the job" and

17   placed on administrative leave for about eight months, beginning in January of 2015. *Id.* When Plaintiff

18   returned on August 10, 2015, she was "stripped of significant work responsibilities" and "transferred

19   against her will to a remote office location." *Id.* At some point shortly thereafter[2], Plaintiff was served

20   with a "Notice of Discipline," that threatened to withhold a portion of her salary. *Id.* Plaintiff then filed

21   complaints with the County as well as the Department of Fair Employment and Housing, but no action

22   was taken against the Defendants. *Id.* ¶ 29.

23       //

24

25   _____
     [2] Plaintiff states that the notice was dated both August 20th and 24th of 2015, but doesn't identify the date she received it. *Id.*

4

# V. <u>STANDARD OF DECISION</u>

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the Complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). A district court's discretion to deny leave to amend is "particularly

1    broad where a plaintiff previously has amended the complaint." *World Wide Rush, LLC v. City of Los*

2    *Angeles*, 606 F.3d 676, 690 (9th Cir. 2010).

3    **VI. <u>ANALYSIS</u>**

4    **A.**      **Discrimination Claims**

5    In Plaintiff's first and second causes of action, she claims that the County discriminated against

6    her because of her gender and marital status. FAC ¶ 35, 38. As discussed in the Court's previous Order,

7    to make a prima facie showing of discrimination  Plaintiff must show "(1) [s]he was a member of a

8    protected class, (2) [s]he was qualified for the position [s]he sought or was performing competently in

9    the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination, demotion,

10    or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Nielsen*

11    *v. Trofholz Technologies, Inc.*, 750 F. Supp. 2d 1157, 1165 (E.D. Cal. 2010) *aff'd*, 470 F. App'x 647 (9th

12    Cir. 2012) (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000)). Defendants argue that the

13    employment actions Plaintiff alleges do not have any "logical connection" to her gender or marital

14    status. MTD at 3.[3]

15    The Court previously found that Plaintiff's claims based on Durick's preferential treatment of his

16    wife were not viable because favoritism of a spouse "may be unfair, but it does not discriminate against

17    women or men . . ., since both are disadvantaged for reasons other than their genders." *Nielsen*, 750 F.

18    Supp. 2d at 1165-66. Plaintiff now claims that male employees were not disadvantaged by Durick's

19    behavior while female employees were. FAC ¶ 20. This allegation, along with all the others, is sufficient

20    to suggest a discriminatory motive at the pleading stage.[4]

21

22

23    [3] In a footnote, Defendants argue that the adverse events Plaintiffs complains of are only linked to Plaintiff's to retaliation claims. MTD at 5, n. 1. Plaintiff responds that these events are the consequence of both retaliatory and discriminatory motives. Opposition at 5. The Court finds it plausible that such actions are the result of mixed motives.

24    [4] Defendants argue that because Plaintiff did not directly respond to their arguments regarding the sufficiency of her discrimination claims, the Court should treat these claims as "abandoned." Reply at 2. "Rule 12 does not by its terms require

25    an opposition; failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012); *see also Fournerat v. Wisconsin Law*

Plaintiff, however, still does not allege facts that suggest that she was discriminated against based upon her marital status. Plaintiff claims she was targeted because she was a married woman who was suspected of having an affair with a co-worker. FAC ¶ 37. For the reasons discussed in the November 15 Order, this theory fails. Plaintiff still does not give any facts, that if true, would tend to show that Durick or anyone else took action against her because she was married. The fact that Durick may have questioned her, on one occasion, for a longer period of time than her male counterpart regarding an alleged relationship is an insufficient basis to suggest Durick's actions were motivated by her marital status. First, the difference in time is small (45 minutes as opposed to 10 minutes). Second, she does not allege that the man was unmarried. Third, Plaintiff does not state that Durick ever made any disparaging statements or gave any indication that her marital status was an issue. Thus, the Court finds that Plaintiff's accusations do not plausibly support a conclusion that she was discriminated against on this basis.

For the reasons discussed above, the Court DENIES Defendants' motion to dismiss Plaintiff's first cause of action and GRANTS Defendants' motion to dismiss Plaintiff's second cause of action. Plaintiff has had sufficient opportunity to develop her marital status discrimination claims (along with guidance from this Court); further opportunity would be futile.

By extension, the Court GRANT Defendants' motion to dismiss Plaintiff's fourth cause of action to the limited extent that this claim is based on the County's failure to prevent discrimination based on marital status.

**B.**     **Hostile Work Environment Claims**

In her third and fifth causes of action, Plaintiff claims that the Defendants maintained a hostile work environment and subjected to her harassment. FAC ¶¶ 41, 47.[5] As discussed in the November 2105

---

*Review,* 420 F. App'x 816, 819 (10th Cir. 2011); *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 40-41 (1st Cir. 2003); *McCall v. Pataki*, 232 F.3d 321, 322-23 (2nd Cir. 2000).

[5] While Plaintiff brings a hostile work environment claim against the County separately from her harassment claims against

1   Order, to succeed on this claim Plaintiff must show she was: "subjected to sexual advances, conduct, or

2   comments that were (1) unwelcome; (2) because of sex; and (3) sufficiently severe or pervasive to alter

3   the conditions of her employment and create an abusive work environment." *Lyle v. Warner Bros.*

4   *Television Prods.*, 38 Cal. 4th 264, 279 (2006) (internal citations omitted). "[T]he hostile work

5   environment form of sexual harassment is actionable only when the harassing behavior is *pervasive* or

6   *severe*." *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (emphasis in original). To be pervasive, the

7   sexually harassing conduct must consist of "more than a few isolated incidents." *Lyle*, 38 Cal. 4th at

8   284.

9        Defendants argue that the FAC still fails to allege conduct that was severe or pervasive enough to

10  create an abusive working environment. MTD at 6-7. This Court previously found Plaintiff's allegations

11  -that Durick used vulgar terms to refer to women and made inappropriate comments about their

12  appearance, physically assaulted a male employee, questioned Plaintiff about an alleged relationship,

13  and treated his wife preferentially- were an inadequate basis for a hostile work environment claim.

14  November 2015 Order at 8. The FAC adds that Durick has used vulgar terms to refer to women "for

15  years," "in Plaintiff's presence," and makes clear that he does not use these terms to refer to male

16  employees. FAC ¶ 20. The FAC also includes an allegation that Durick "groped" a female employee's

17  "upper thigh" during a meeting. *Id.* ¶ 22. Along with Plaintiff's new claim that Durick only required

18  male employees to make up for the extra work his preferential treatment of his wife created, the Court

19  finds that these allegations are sufficient to survive a motion to dismiss. While this is a close call, the

20  Court is mindful of its obligation to construe all facts in Plaintiff's favor at this stage.

21       Defendants argue that Durick's language cannot be the basis for a sexual harassment suit,

22  because they believe his terminology was gender-neutral. MTD at 5. The Court disagrees with

23  ─────────────────────────────────────────────

24  Durick, Duerkson and Cohen, she appears to be alleging the same legal theory (violation of Cal. Gov. Code § 12940) in both
    claims. *Cf.* FAC ¶ 41 (alleging that the County "created tolerated, condoned, and allowed a hostile work environment in
    violation of FEHA . . .") and FAC ¶ 47 (alleging that named Defendants violated FEHA "by creating a hostile work

25  environment and harassing Plaintiff . . .").

1    Defendants' characterization of Durick's language. Moreover, "it is the disparate treatment of an

2    employee on the basis of sex—not the mere discussion of sex or use of vulgar language—that is the

3    essence of a sexual harassment claim." *Lyle*, 38 Cal. 4th at 280. Plaintiff claims that the language at

4    issue was directed towards women, but not men. FAC ¶ 20. That is sufficient to show that Durick's

5    conduct was based on gender at the motion to dismiss stage. *Birschtein v. New United Motor Mfg., Inc*.,

6    92 Cal. App. 4th 994, 1001 (2001) (holding that to plead a cause of action for environmental sexual

7    harassment, "it is only necessary to show that gender is a substantial factor in the discrimination and that

8    if the plaintiff had been a man she would not have been treated in the same manner.") (internal citations

9    omitted). Because such language was used to refer to women "routinely" and for "for years," it supports

10   a conclusion that harassment was "pervasive" as opposed to "isolated or sporadic."

11         Defendants also object to Plaintiff's use of the word "grope" because Plaintiff does not allege

12   further facts suggesting that the touching was "unwelcome or of a sexual nature." MTD at 7. According

13   to the Oxford English dictionary, "grope" can mean "to use the hands in feeling, touching, or grasping,"

14   or "to touch with the hands; to examine by the touch; to handle, feel; to probe." *Grope*, OED Online,

15   http://www.oed.com (last visited Jan. 28, 2016). These are actions capable of being observed by

16   Plaintiff. Construing the facts in a light most favorable to Plaintiff, the Court finds it reasonable for

17   Plaintiff to infer that such a display was sexual. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d

18   1116, 1123 (9th Cir. 2008) (finding Plaintiff's conclusion that Defendant's comments were racially

19   motivated was "a reasonable one that we must construe in his favor at the motion to dismiss stage.").

20         Defendants claim that even if Plaintiff has alleged viable claims against the County, the same

21   cannot be said for her claims against the individual defendants. MTD at 7-8. Defendants argue first that

22   Cohen cannot be liable, because she is primarily accused of being the subject of preferential treatment.

23   *Id.* at 8. She is also alleged to have responded to a co-worker's refusal to do her work with the statement,

24   "Doesn't she know who I am? I'm Tim's wife." FAC ¶ 18. Plaintiff does not respond to this issue in her

25   Opposition, or suggest any other basis upon which this Court could find Cohen liable for harassment.

1   The Court agrees that these allegations fail to describe actionable behavior and GRANTS Defendants'

2   motion to dismiss Plaintiff's fifth cause of action as to Cohen.

3        Plaintiff alleges that Duerkson chose to "look the other way" with regards to Durick's

4   preferential treatment of his wife. FAC ¶ 17. She also accuses Duerkson of failing to take action against

5   Durick after Plaintiff filed a complaint against him. *Id.* ¶ 29. Defendants argue that she cannot be liable

6   for failing to prevent another's actions. MTD at 8. Plaintiff suggests that Duerkson may be liable under

7   *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 113 (2004). Opposition at 5-6. In this case, the

8   appellate court found that a supervisor cannot escape liability by getting another employee to act as a

9   "tool for carrying out a discriminatory action," as "the original actor's purpose will be imputed to the

10  tool, or through the tool to their common employer." *Reeves,* 121 Cal. App. 4th at 113. This quote,

11  however, is taken from that court's analysis of whether a defendant could escape liability for retaliatory

12  conduct by delegating an employment action to a third party. The Court fails to see how it applies to the

13  facts alleged here. In the context of sexual harassment claims, California law is "clear" that "mere

14  inaction by a nonharassing supervisor does not constitute aiding and abetting." *Fiol v. Doellstedt*, 50

15  Cal. App. 4th 1318, 1327 (1996). Rather, the supervisor must either "personally engage[] in sexually

16  harassing conduct . . .  or substantially assist[] or encourage[] continued harassment . . ." *Id.*  Thus,

17  Plaintiff's claim that "it is clear that the named defendants were making the employment decisions

18  regarding Plaintiff" is beside the point. Opposition at 6. For Duerkson to be liable for harassment she

19  must have participated in, or at least encouraged, the harassment itself. Plaintiff does not suggest that

20  she did so. Thus, the Court GRANTS Defendants motion to dismiss Plaintiff's fifth cause of action as to

21  Duerkson. Plaintiff has had ample opportunity to address this issue in her pleadings; further opportunity

22  would be futile.

23       It is unclear if Defendants contest that Durick should not personally held liable. *See* Opposition

24  at 7-8. As discussed above, the Court has found that Durick's alleged use of vulgar terminology in

25  regards to women but not men, his requirement that women, but not men, to make up for the preferential

treatment of his wife, and his alleged sexual touching of a female coworker plausibly suggest that he was personally engaged in harassing conduct. Thus, the Court DENIES Defendants' motion to dismiss Plaintiff's fifth cause of action as to him.

## VII. <u>CONCLUSION AND ORDER</u>

For the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss (Doc. 17), as follows:

The Court DENIES Defendants' motion to dismiss Plaintiff's first cause of action.

The Court GRANTS Defendants' motion to dismiss Plaintiff's second cause of action. Because it would be futile, no leave to amend is granted. By extension, the Court GRANTS Defendants' motion to dismiss Plaintiff's fourth cause of action to the limited extent that this claim is based on the County's failure to prevent discrimination based on marital status.

The Court DENIES Defendants' motion to dismiss Plaintiff's third cause of action.

The Court GRANTS Defendants' motion to dismiss Plaintiff's fifth cause of action as to Defendants Cohen and Duerkson. No claims remain against Defendant Cohen, so she is dismissed from this case.

The Court DENIES Defendants' motion to dismiss Plaintiff's fifth cause of action as to Durick.

Because it would be futile, Plaintiff is not granted leave to amend dismissed claims.


IT IS SO ORDERED.

Dated:   __February 1, 2016__            ___/s/ Lawrence J. O'Neill___
                                         UNITED STATES DISTRICT JUDGE